UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| JON PAUL KEAN, # 210913, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-847 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| CAROL HUGHES, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This lawsuit arises out of plaintiff's confinement at the Earnest C. Brooks Correctional Facility (LRF) in April 2011. Plaintiff alleges that Assistant Resident Unit Supervisor (ARUS) Carol Hughes, and Corrections Officers Johnny Mitchell, Matthew Pohl, and Bennie Torsch were deliberately indifferent to the serious risk of plaintiff being assaulted by another prisoner on April 5, 2011. Plaintiff seeks an award of damages. The matter is before the court on a motion for summary judgment by defendants Mitchell, Pohl, and Torsch based on the affirmative defense provided by 42 U.S.C. § 1997e(a). (docket # 21). Plaintiff has filed his response. (docket # 28). For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted, and that all plaintiff's claims against defendants Mitchell, Pohl, and Torsch be dismissed without prejudice.

## Applicable Standards

### A. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th

Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible

of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

B. **Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendants Mitchell, Pohl, and Torsch have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed"

complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[1] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process.

---

[1] A copy of the policy directive is found in the record. *See* docket # 22-2, ID# s 62-68.

Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or the warden's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the

Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions. In April 2011, he was an inmate at the Earnest C. Brooks Correctional Facility (LRF). Plaintiff states that

on April 5, 2011, he was "slashed/stabbed" by an unidentified assailant. He filed this lawsuit on August 15, 2012, more than a year after the alleged incident.

Grievance No. LRF-11-04-00582-03B is the only grievance regarding this incident that plaintiff filed and pursued through a Step III decision. (docket # 22-3, ID#s 70-75). ARUS Carol Hughes is the only person named in the grievance, which is forth verbatim below:

> On the "incident" date [April 5, 2011] I was slashed/stabbed in my neck, but previously on 4-1-11 I spoke to ARUS Hughes whom told me to <u>not</u> to go to chow <u>or</u> yard, pack-up my property and she would have staff "lock me up." My safety and life was jeopardized because staff disregarded what I told them.

(docket # 22-3, ID# 74). The only place Mitchell, Pohl, and Torsch were mentioned was in the space provided on the grievance form for plaintiff to describe his attempt to resolve the issue before writing his grievance. (*Id.*).

The Step I grievance response stated that plaintiff had never advised ARUS Hughes of any threat of assault. "Hughes state[d that] she never had a conversation with this prisoner about needing protection." (docket # 22-3, ID# 74). Plaintiff pursued a Step II appeal. His complaint on appeal was that Hughes's response to his grievance had not been timely. He made an unsuccessful attempt to expand the scope of his grievance at Step II by adding a list of legal conclusions regarding Pohl, Mitchell, and Torsch, and their supervisors:

> ARUS Hughes did <u>not</u> respond to timely filed grievance. Per 42 U.S.C.A. sec. 1997e(a) and by <u>not</u> <u>responding</u> <u>or</u> asking for a time extension has violated the PLRA, refused me <u>Constitutional Rights</u> under <u>BOTH</u> the United States Constitution and the Michigan Constitution along with officer(s) Mitchell, Pole, Torch, 42 U.S.C.A. sec. 1997e(e), Eighth Amendment and Due Process Clause, along with their supervisor(s) whom may have known and refused to "ACT" as required by law. Full investigation needs to be done as to why this happened, why PLRA and grievance system is treated as a 'joke' and Constitutional Rights can be violated, for my personal safety.

(docket # 22-3, ID# 72). The warden upheld the Step I response finding that it was "appropriate and supported at this level." (*Id.* at ID# 73). The warden noted that the "ARUS categorically denie[d] the prisoner had ever had a conversation with her about needing protection." (*Id.*). The warden ignored plaintiff's attempt to interject complaints about anyone other than ARUS Hughes. (*Id.*).

Plaintiff argued at Step III that the Step I response was "a lie" and that the Step II decision was "unresponsive." (docket # 22-3, ID# 72). On August 17, 2011, the Grievance and Appeals Section denied plaintiff's Step III appeal. (docket # 22-3, ID# 71).

In response to defendants' motion for summary judgment, plaintiff filed an affidavit describing conversations he claims to have overheard or had with the moving defendants in April 2011. (docket # 28-4, ID#s 101-02). None of the purported dialogue involving defendants Pohl, Mitchell, and Torsch appeared in the grievance at issue.

**Discussion**

Defendants have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220.

Plaintiff argues that Grievance No. LRF-11-04-00582-03B should be considered as grievance against the moving defendants because their names were listed in his description of his attempt to resolve the issue before filing a grievance and the words "them" and "staff" found in the last sentence of the grievance "are not singular." (Plf. Brief at 1, docket # 28, ID# 86). Plaintiff's grievance does indeed end with a conclusory statement that his "safety and life [were] jeopardized

because staff disregarded what [he] told them," but the only verbal interaction with a prison employee described in his grievance was the alleged conversation with ARUS Hughes on April 1, 2011. Mitchell, Pohl, and Torsch were not named in his grievance and he made no specific factual allegations against these individuals.

Plaintiff's criticisms of the investigation undertaken after the incident do nothing to establish exhaustion of his available administrative remedies. (Plf. Brief at 1-3, ID#s 86-88). His argument that he mentioned Pohl, Mitchell, and Torsch in his Step II appeal (*Id.* at 2, ID# 87) is equally ineffectual. His grievance was against ARUS Hughes and listing of Pohl, Mitchell, and Torsch and their supervisors in the Step II appeal (docket # 22-3, ID# 72) did not properly exhaust any claim against the moving defendants. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008). Plaintiff did not properly exhaust any grievance against defendants Pohl, Mitchell, and Torsch. I find that defendants have carried their burden on the affirmative defense and are entitled to dismissal of all of plaintiff's claims.

The only remaining question is whether the dismissal of plaintiff's claims should be with or without prejudice. Generally, the dismissal of claims for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) is without prejudice. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006). Defendants have not presented any developed argument why dismissal with prejudice would be appropriate.

**Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motion for summary judgment (docket # 21) be granted and that all plaintiff's claims against defendants Mitchell, Pohl, and Torsch be dismissed without prejudice.


Dated:  September 30, 2013          /s/  Joseph G. Scoville
                                    United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006)..