UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| JON PAUL KEAN, # 210913, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-847 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| CAROL HUGHES, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This lawsuit arises out of plaintiff's confinement at the Earnest C. Brooks Correctional Facility (LRF) in April 2011.  Plaintiff alleges that Assistant Resident Unit Supervisor (ARUS) Carol Hughes was deliberately indifferent to the serious risk of plaintiff being assaulted by an unidentified prisoner on April 5, 2011.  Plaintiff seeks an award of damages.  The matter is before the court on defendant's motion for summary judgment. (docket # 49).  Plaintiff has filed his response. (docket # 54).  For the reasons set forth herein, I recommend that plaintiff's claim for damages against defendant Hughes in her official capacity be dismissed with prejudice because it is barred by Eleventh Amendment immunity.  I recommend that defendant's motion for summary judgment be granted and that judgment be entered in her favor on plaintiff's claim for damages in her individual capacity.

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient

to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

### **Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions. (Plf. Dep. at 6-12, docket # 50-1, and Dep. Ex. #1, Page ID 211-12, 234-36). Plaintiff was an inmate at the Earnest C. Brooks Correctional Facility (LRF) from October 21, 2010, through April 14, 2011. (Plf. Dep. at 13-15, Page ID 212-13). Plaintiff was a security level IV inmate. (*Id.* at 19-20, 68, Page ID 214, 226). Defendant Carol Hughes was an Assistant Resident Supervisor (ARUS) at LRF. (Hughes Aff. ¶ 4, docket # 50-2, Page ID 259).

Plaintiff states that on the morning of April 1, 2011, he asked defendant Hughes to place him in protective custody.[1] (Plf. Dep. at 75, 77, Page ID 228). When plaintiff was asked at his

---

[1] Defendant denies having any conversation with plaintiff on April 1, 2011. (Hughes Aff. ¶¶ 6, docket # 50-2, Page ID 260). There is significant evidence supporting defendant's position that the purported conversation with plaintiff on April 1, 2011, never happened. (Mitchell Aff. ¶¶ 5-6, docket # 50-3, Page ID 288; Pohl Aff. ¶ 4, docket # 50-5, Page ID 294). Plaintiff's assertion that a conversation occurred must be taken as true for present purposes. However, plaintiff's complaint is not verified under penalty of perjury. The arguments in his brief regarding the contents of his conversation with defendant are not evidence. *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ( "Arguments in the parties' briefs are not evidence." ). Plaintiff's deposition testimony provides little insight regarding the content of the information plaintiff purportedly conveyed to defendant.

deposition whether he had any written communications relevant to this lawsuit, his response was: "Just what I wrote out to her when I went down and talked to her, and apparently she threw that away or did whatever she did with it because I'm not – she totally denied ever speaking to me." (*Id.* at 69, Page ID 226). Plaintiff has never identified the specific content of whatever he wrote down for defendant's consideration. Plaintiff did state in a declaration dated March 15, 2013, that on April 1, 2011, he told defendant that an unspecified inmate in "D Unit"[2] made an unspecified "threat" against him and that he believed his life was in danger. (Plf. Decl. docket # 28-4, Page ID 101). Plaintiff's deposition testimony indicates that he conveyed to Hughes his ongoing desire to be transferred to a lower security level prison. (Plf. Dep. at 76, Page ID 228).

There is no record of plaintiff making any request for protective custody on April 1, 2011. (Plf. Dep. at 72-73, Page ID 227; Unit Log Book, docket # 50-2, Page ID 267-73). Plaintiff made no verbal complaints to the warden, deputy warden, assistant deputy warden, captains, lieutenants, or shift commanders between April 1 and April 5, 2011, regarding being threatened by anyone. (Plf. Dep. at 83-84, Page ID 229). There were hundreds of prison staff members that plaintiff could have contacted at any time between the morning of April 1, 2011, and lunch time on April 5, 2011, if he had felt threatened, but he did not do so. (Hughes Aff. ¶ 9, Page ID 261-62). Plaintiff could have placed a "kite" to the warden, deputy warden, assistant deputy wardens, LRF's Inspector, resident

---

[2]Plaintiff testified that the unidentified inmate said something to the effect of "I'm going to get you." (Plf. Dep. at 75, Page ID 228). Plaintiff indicated that he learned the inmate's last name – Harris – by asking around, observing an inmate number on his uniform, and possibly calling an unidentified friend in Grand Rapids, providing that individual with the inmate's number and having that friend look up the inmate's identity on OTIS and then relay Harris's name back to plaintiff. (*Id.*). Plaintiff testified that he "put it together," before going to see defendant on the morning of April 1, 2011 (Plf. Dep. at 76, Page ID 228). Plaintiff never testified whether he did or did not convey inmate Harris's name and/or number to defendant. More significantly, there is no evidence that Harris ever attacked plaintiff.

unit managers, assistant resident unit managers, shift commanders (captains and lieutenants), sergeants, or resident unit officers, but he did not recall doing so. (Hughes Decl. ¶ 10, Page ID 262, Plf. Dep. at 73-74, Page ID 226-27). Plaintiff did not file any grievance complaining that nothing had been done regarding his concerns about his safety. (Plf. Dep. at 78, Page ID 229; Hughes Aff. ¶ 12, Page ID 263).

Plaintiff had no contact with ARUS Hughes on April 2, 3, or 5, because she was not working on those days. Further, plaintiff had no contact with Hughes on April 4, 2011. (Hughes Aff. ¶¶ 4-5, Page ID 259-60).

Plaintiff states that on April 5, 2011, as he was going out the D Unit's double doors, someone slapped him on the right side of the back of his neck. Plaintiff does not know the identity of the inmate who hit him. (Plf. Dep. at 39, 43, 50, 93, Page ID 219-20, 222, 232). Plaintiff estimated that the incident lasted approximately one second, "if even that." (*Id.* at 45, Page ID 220). Plaintiff could not identify any witnesses to this incident. (*Id.* at 44, Page ID 220). Plaintiff could not even state which way his alleged assailant went to escape after this incident. (*Id.* at 51, Page ID 222). Plaintiff appeared before prison staff members with a small cut or scratch on his neck. (*Id.* at 40-41, 52, 57, Page ID 219, 222-23; *see also* Plf. Dep. Ex. 2, Page ID 239-40). Medical records show that it was "a very superficial scratch" with no active bleeding. (4/5/11 progress notes, docket # 50-2, Page ID 283). The progress notes went on to record as follows: "Pt. states he is very upset because he was supposed to down grade and told the ARUS last week 'I wanted out of here!'" (*Id.*). Plaintiff's scratch did not require any stitches. (Plf. Dep. at 37, Page ID 218). It did not require a

trip to the hospital. (*Id.* at 38, Page ID 219). Plaintiff did not have any broken bones or bruises. (*Id.* at 39-40, Page ID 219). Plaintiff did not lose consciousness.[3] (*Id.* at 58, Page ID 224).

On April 5, 2011, plaintiff asked ARUS Brydron to place him in protective custody. Plaintiff indicated the reason he was requesting protective custody was an incident earlier that day when he sustained a small cut on his neck. Plaintiff related that "he did not see who struck him and that as far as he knows there were no witnesses." (4/5/11 Request for Protection, docket # 50-1, Page ID 238). Inmate Harris denied any involvement and there were no witnesses to the alleged incident. Plaintiff did not obtain a transfer to a lower security level prison. Plaintiff was transferred to another level IV prison. (*Id.*).

On April 12, 2011, plaintiff filed a grievance against defendant Hughes. (Plf. Dep. at 90, Page ID 232). This is the first time ARUS Hughes's name appears. Plaintiff claimed in his grievance that he spoke to Hughes on April 1, 2011, and that she had promised to have staff "lock [him] up." (*Id.* at Ex. 4, Page ID 242).

## Discussion

**I.    Eleventh Amendment Immunity**

Plaintiff's section 1983 claim for damages against defendant in her official capacity is barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

---

[3]Although the superficial nature of plaintiff's injury is a hallmark of a self-inflicted injury (*see* Hughes Aff. ¶ 11, Page ID 262-63), plaintiff's testimony claiming that he was attacked by some unidentified assailant must be accepted for the purpose of addressing defendant's motion for summary judgment.

100 (1984). Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012). Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendant is entitled to dismissal with prejudice of plaintiff's claim for monetary damages against her in her official capacity.

## II.     Claim for Damages Against Defendant in Her Individual Capacity

Plaintiff alleges that defendant Hughes violated his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause by failing to protect him from an April 5, 2011, assault by an unknown assailant, which lasted one second, at most, in which plaintiff sustained "a very superficial scratch." (docket # 50-2, Page ID 283). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "'To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.'" *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Eighth Amendment proscribes deliberate indifference by prison officials to an unreasonable risk of injury to prison inmates. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). An Eighth Amendment claim contains objective and subjective components. *Cardinal v. Metrish*, 564 F.3d 794, 802 (6th Cir. 2009). First, "the deprivation alleged must be, objectively, 'sufficiently serious.' For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious

harm." *Farmer*, 511 U.S. at 834; *Woods*, 110 F.3d at 1223.  Plaintiff never informed Hughes that any specific inmate posed any serious risk.  No reasonable trier of fact could find in plaintiff's favor on the objective component of his claim against defendant.

The second requirement for a claim of deliberate indifference to the risk of assault against an inmate by a fellow inmate is that the prison official have a sufficiently culpable state of mind. In *Farmer v. Brennan*, the Supreme Court held that the subjective element of a claim of deliberate indifference requires at least criminal recklessness.  511 U.S. at 839-40.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows and disregards and excessive risk to inmate health or safety; the official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference."  511 U.S. at 837;  *see Cardinal v. Metrish*, 564 F.3d at 802; *see also Farah v. Wellington*, 295 F. App'x 743, 749 (6th Cir. 2008). "This burden is not light; even 'an official's failure to alleviate a significant risk that [s]he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as punishment.'" *Shade v. City of Middletown*, 200 F. App'x 566, 569 (6th Cir. 2006) (quoting *Farmer* 511 U.S. at 838); *see Perez v. Oakland County*, 466 F.3d 416, 424 (6th Cir. 2006).  The plaintiff's "burden can be met 'in the usual ways including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Smith v. Yarrow*, 78 F. App'x 529, 537 (6th Cir. 2003) (quoting *Farmer*, 511 U.S. at 842).

There is no evidence supporting an inference that defendant Hughes knew that any specific inmate posed a particular risk to plaintiff.  There is no evidence that plaintiff was unusually

vulnerable. A negligent failure to respond to a prisoner's vague report of a threat posed by some unidentified individual, not conveyed by plaintiff to anyone in writing in the days that followed, and where the purportedly threatening unidentified prisoner may or may not have been plaintiff's eventual unknown assailant, falls far short of what is necessary to satisfy the subjective component of an Eighth Amendment claim. No reasonable trier of fact could find in plaintiff's favor on the subjective component of an Eighth Amendment claim against defendant.

## **Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's claim for damages against defendant Hughes in her official capacity be dismissed with prejudice because it is barred by Eleventh Amendment immunity. I recommend that defendant's motion for summary judgment (docket # 49) be granted and that judgment be entered in her favor on plaintiff's claim for damages against her in her individual capacity.

Dated: March 2, 2015         /s/ Phillip J. Green
                             United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006)..